UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| RYAN LaFLAMME, | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | No. 1:14-cv-57-DBH |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of returning to his past relevant work as a customer service representative or a cashier or, in the alternative, of performing other work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge's determination of his residual functional capacity ("RFC") was unsupported by substantial evidence, those flaws undermined the relevance of a vocational expert's testimony that he could perform his past relevant work and other work, and the administrative law judge's credibility determination cannot stand. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 5-21. I find no reversible error and, accordingly, recommend that the court affirm the decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, Finding 1, Record at 12; that he had a severe impairment of degenerative disc disease of the lumbar spine, Finding 3, *id*.; that he retained the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, could stand or walk for six hours in an eight-hour workday, could sit for six hours in an eight-hour workday, and would have unlimited use of his hands and feet to operate foot controls, Finding 5, *id*. at 14; that he was capable of performing past relevant work as a Customer Service Representative and Cashier II, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id*. at 19; that, in the alternative, considering his age (33 years old, defined as a younger individual, on his alleged disability onset date, July 1, 2010), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, *id*. at 20; and that he, therefore, had not been disabled from April 5, 2009, through the date of the decision, November 16, 2012, Finding 7, *id*. at 21.[2] The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must

---

[2] The administrative law judge mistakenly identified April 5, 2009, as the plaintiff's alleged onset date of disability. As the administrative law judge recognized elsewhere in his decision, while the plaintiff initially claimed an alleged disability onset date of April 5, 2009, he amended that date during his hearing to July 1, 2010. *See* Record at 10. Nothing turns on the error.

2

be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

In the alternative, the administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff challenges both the physical and mental components of the administrative law judge's RFC determination. *See* Statement of Errors at 5-18. His counsel conceded at oral argument, as the commissioner had argued in her brief, that any error in determining physical RFC was harmless with respect to the Step 4 finding that he could return to his past relevant work. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 14) at 11-12. He clarified that his client's challenge to the physical RFC component bears on the Step 5 finding

3

that he could perform work existing in significant numbers in the national economy, while his challenge to the mental RFC component bears on the Step 4 finding that he could perform past relevant work. He acknowledged that, to merit reversal and remand, his client needed to demonstrate that both the Step 4 and alternative Step 5 findings were without substantial evidence.

I find no reversible error in the administrative law judge's mental RFC determination. Hence, I recommend that the court affirm the decision on the basis of the Step 4 finding that the plaintiff retained the RFC to return to his past relevant work. I do not address the plaintiff's challenge to the administrative law judge's alternative Step 5 determination. While the plaintiff also separately challenges the administrative law judge's credibility determination, I conclude that he falls short of demonstrating entitlement to remand on that basis.

### A. Handling of Mental Impairments

The administrative law judge found, "The [plaintiff's] medically determinable mental impairment of [sic] does not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore nonsevere." Record at 13. He addressed the four broad functional areas that disability regulations require be considered in evaluating the severity of mental disorders, *see* 20 C.F.R. §§ 404.1520a(c), 416.920a(c), explaining:

> The first functional area is activities of daily living. In this area, the [plaintiff] has mild limitation. In his Function Report, the [plaintiff] noted taking care [o]f his infant daughter by feeding her and changing her. He also noted taking care of pets. [He] noted preparing simple meals and washing dishes. [He] reported driving a car and shopping in stores. [He] testified that he is able to shower on his own[.]
>
> The next functional area is social functioning. In this area, the [plaintiff] has mild limitation. Mental health treatment notes from 2012 report that [he] enjoys shopping and visiting friends and that he was trying to get his license back in order to be more social. He testified that he uses Facebook to communicate with friends.
>
> The third functional area is concentration, persistence or pace. In this area, the [plaintiff] has mild limitation. [He] testified that he plays video games for up to two hours per day. [He] testified that he collects cards and spends most of the time

carefully sorting them by brand and year. [He] also testified that he uses Facebook for about thirty minutes per day.

The fourth functional area is episodes of decompensation. In this area, the [plaintiff] has experienced no episodes of decompensation which have been of extended duration.

*Id*. (citations omitted).

He stated, "Although adjudged to be 'non-severe,' the [plaintiff's] above-noted impairments were considered in assessing his residual functional capacity[.]" *Id*. He explained, in the RFC section of his decision:

> In addition to the [plaintiff's] physical limitations, he also alleged disability based upon psychiatric symptoms. [He] had filed an earlier claim alleging disability based on Attention Deficit Hyperactivity Disorder, OCD [obsessive compulsive disorder], and social anxiety beginning in August 2007, which was denied in December 2007. However, the record shows only mild limitations based on the [plaintiff's] mental impairments.
>
> The record shows that the [plaintiff] is diagnosed with post traumatic stress disorder (PTSD) and Attention Deficit Hyperactivity Disorder for which he has taken medication for several years. Of note, in March 2010 (four months prior to [his] alleged onset of disability), [he] presented to psychiatrist Paul Minot, MD for medication management with his girlfriend of two years with whom he had a one-year-old child. [He] reported escalating mood instability. The [plaintiff's] girlfriend reported that [he] is a chronic liar. In April, Dr. Minot noted that the [plaintiff] exhibits persistent dishonesty and difficulty with impulse control.
>
> In September 2010, examining clinicians noted normal mental status and stable symptoms. The [plaintiff] reported doing well on current medications. However, in April 2011, the [plaintiff] presented to the emergency department with a panic attack and told doctors that he was trying to hurt himself. Two days later, Dr. Bonney [treating physiatric pain specialist John Bonney, M.D.] noted that the [plaintiff] had no amphetamines in his system despite being prescribed Ritalin. The doctor noted that he was about to see [a] new psychiatrist. Treatment notes show that he was still watching his daughter during the day while his girlfriend was at work.
>
> In May 2011, the [plaintiff] reported that he and his girlfriend had split up and that he had moved into his parents' house but was still watching his daughter during the day. Mental status examination in August was within normal limits.

5

> Mental health treatment notes from 2012 report that the [plaintiff] enjoys shopping and visiting friends and that he was trying to get his license back in order to be more social. [He] reported that he was doing well on current medications.

*Id*. at 17 (citations omitted).

The plaintiff alleged that his disabling symptoms included difficulty concentrating and continuing flashbacks as a result of his PTSD. *See id*. at 15. The administrative law judge found his allegations not credible to the extent inconsistent with his RFC determination, *see id*. at 17-18, a conclusion that I discuss below. With respect to expert opinion evidence, he explained that he:

1. Gave limited weight to a February 2012 opinion of Dr. Bonney that the plaintiff's chronic opiate use for pain could limit his memory for complex tasks and effectiveness in the workplace, which he deemed inconsistent with the record, including evidence that the plaintiff spent time intricately sorting his baseball card collection, playing video games, and driving a car. *See id*. at 18.

2. Relied heavily on the opinions of agency nonexamining consultants David Margolis, Ph.D., and Brenda Sawyer, Ph.D., that the plaintiff would have mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, observing, "As previously noted, the [plaintiff] has consistently had normal mental status examinations and stable symptoms with medication." *Id*. at 19 (citations omitted).[3]

3. Gave little weight to an opinion of agency nonexamining consultant Lewis Lester, Ph.D., which was rendered in 2007, three years before the alleged disability onset date, with more recent treatment notes showing that the plaintiff had been stable with medication. *See id*.[4]

---

[3] Dr. Margolis's opinion is dated February 22, 2011, *see* Record at 67-68, and that of Dr. Sawyer is dated June 14, 2011, *see id*. at 90-91.
[4] Dr. Lester found that the plaintiff had mild restriction of activities of daily living, moderate limitations in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. *See* Record at 1644.

4. Gave little weight to the opinion of Dr. Minot that the plaintiff would have marked limitations in understanding, remembering, and carrying out detailed instructions, being punctual, accepting and responding to supervisors' instructions, and setting realistic goals, "as this opinion is unsupported by the record which shows only moderate mental limitations[.]" *Id*. (citations omitted).

The plaintiff argues that, in several respects, the administrative law judge's finding of nonsevere mental impairments is unsupported by substantial evidence. *See* Statement of Errors at 7-12.

First, he complains that, in stating that his "mental impairment," singular, was nonsevere, the administrative law judge overlooked his diagnoses of multiple mental impairments, including PTSD, ADHD, mood disorder, anxiety disorder, and an impulse control disorder, failing to specify which impairment he found nonsevere or whether he even considered evidence that the plaintiff had several mental impairments. *See id*. at 7. He contends that this was reversible error, given that several treating sources and state agency psychologists concluded that his mental impairments, *in toto*, significantly limited his ability to perform basic work-related activities. *See id*. (citing the opinions of Drs. Bonney, Lester, and Minot, as well as those of treating physician G.F. John Guernelli, M.D., dated February 15, 2012, *see* Record at 1199-1200, and agency nonexamining consultant Brian Stahl, Ph.D., dated May 3, 2010, *see id*. at 1501-03).

Nonetheless, as the commissioner points out, *see* Opposition at 4, the reference to a singular mental impairment, in context, appears to have been a scrivener's error. At the conclusion of the administrative law judge's Step 2 discussion, he referenced mental "impairments," plural, Record at 13, and he noted in his Step 4 discussion that the plaintiff had been diagnosed with PTSD and ADHD, *see id*. at 17. With respect to the additional diagnoses, the commissioner correctly notes

that a diagnosis, standing alone, does not address the severity of a condition. *See* Opposition at 4-5; *see also, e.g., White v. Astrue*, Civil Action No. 10-10021-PBS, 2011 WL 736805, at *6 (D. Mass. Feb. 23, 2011).

Second, the plaintiff asserts that the administrative law judge admitted that his mental impairments were of moderate, rather than mild, severity when he stated that the Minot opinion was unsupported by the record, "which shows only moderate mental limitations." Statement of Errors at 10-12; Record at 19 (citations omitted). Yet, as the commissioner contends, *see* Opposition at 9-11, this solitary reference plainly was a scrivener's error. In the detailed Step 2 discussion quoted above, the administrative law judge made clear that he found the plaintiff's mental impairments nonsevere.

Third, the plaintiff complains that the administrative law judge ignored the opinions of Drs. Stahl and Guernelli. *See* Statement of Errors at 4-6, 8. At oral argument, his counsel contended that the error in ignoring these opinions was not harmless because both assessed limitations that would preclude the plaintiff's performance of his past relevant work as a Cashier II and Customer Service Representative, including limitations in dealing with the public that were assessed by Dr. Stahl. *See* Record at 1199-1200, 1503.

The commissioner concedes that it was error to ignore the opinion of Dr. Guernelli, a treating source, but argues that the error was harmless because Dr. Guernelli's opinion was not significantly more favorable to the plaintiff than that of Dr. Minot, which the administrative law judge did discuss. *See* Opposition at 8-9; *see also, e.g., Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (remand unwarranted when treating source opinion that administrative law judge overlooked "was not significantly more favorable to [the claimant]" than an opinion of the same treating source that was specifically discussed, a circumstance in which there was "no reasonable

8

likelihood that [consideration of the ignored opinion] would have changed the ALJ's [administrative law judge's] determination that [the claimant] was not disabled"); *Wilner v. Astrue*, No. 2:11-cv-21-GZS, 2012 WL 253512, at *5 (D. Me. Jan. 26, 2012) (rec. dec., *aff'd* Feb. 14, 2012) (citing, *inter alia*, *Zabala* in holding that administrative law judge did not commit reversible error in ignoring a treating source opinion that a claimant could work only light duty, four hours a day, when he offered good reasons for rejecting the opinions of other treating sources that the claimant was incapable of working full-time, and he relied on other expert opinions that could stand as substantial evidence of the claimant's RFC).

The commissioner argues that the Guernelli opinion is not significantly more favorable to the plaintiff than that of Dr. Minot because, whereas Dr. Minot was the treating psychiatrist, Dr. Guernelli is not a psychologist or psychiatrist, and Dr. Guernelli provided even less explanation for his opinion than did Dr. Minot. *See* Opposition at 9; *compare* Record at 1199-1200 *with id*. at 1667-68. At oral argument, the plaintiff's counsel countered that Dr. Guernelli's opinion was significantly more favorable to his client than that of Dr. Minot because Dr. Guernelli found a number of additional marked restrictions in mental functioning. He added that, while Dr. Guernelli is not a psychologist or psychiatrist, he is a pain specialist and, therefore, qualified to assess the mental effects of pain, which he posited is particularly important here because this is primarily a pain case.

As counsel for the commissioner rejoined at oral argument, both Drs. Minot and Guernelli assessed a disabling level of restrictions; for example, both deemed the plaintiff markedly limited in, or effectively precluded from, performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances. *See id.* at 1199, 1667. Therefore, substantively, the opinion of Dr. Guernelli was not significantly more favorable to the plaintiff

9

than that of Dr. Minot. In addition, as counsel for the commissioner pointed out, the administrative law judge did expressly consider a physical RFC opinion offered by Dr. Guernelli, thereby taking into account his conclusions regarding the impact of the plaintiff's pain. *See id.* at 18, 1201-04. In sum, because the mental RFC opinion of Dr. Guernelli is not significantly more favorable to the plaintiff than that of Dr. Minot and, as discussed below, the Margolis and Sawyer opinions constitute substantial evidence in support of the administrative law judge's mental RFC determination, this case falls within the rule of *Zabala* and *Wilner*.

Turning to the Stahl opinion, the commissioner argues that the plaintiff raises this point so cursorily that he waived it and, even if it is not waived, he advances no authority for the proposition that an administrative law judge must explicitly consider an opinion that predates a claimant's alleged onset date of disability. *See* Opposition at 4 n.1. The commissioner is correct that the plaintiff's discussion of the Stahl opinion is so cursory as to be waived. The plaintiff mentions the omission in passing, failing to explain why it was error or how any error was material. *See* Statement of Errors at 5, 8; *Graham v. United States,* 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted). While the plaintiff's counsel endeavored at oral argument to fill in these blanks, his efforts came too late. *See, e.g., Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

In any event, as the commissioner alternatively argues, even if the point were not waived, it would not carry the day. While, at oral argument, the plaintiff's counsel contended that the fact that the Stahl opinion predated the amended alleged onset date of disability was not significant, he cited no authority for that proposition, relying instead on the fact that, in addressing the Bonney opinion, which spanned the period from April 5, 2009, to February 24, 2012, *see* Record at 1242, the administrative law judge did not differentiate between time periods predating and antedating the alleged onset date, *see id*. at 18. Yet, the Bonney opinion, unlike that of Dr. Stahl, covered ground that included the time period at issue. In addition, as counsel for the commissioner pointed out at oral argument, Drs. Margolis and Sawyer, who like Dr. Stahl were nonexamining agency consultants, had the benefit of review of a fuller record than did Dr. Stahl. *Compare id*. at 65-67, 90 *with id*. at 1499.

Finally, the plaintiff directly attacks the administrative law judge's heavy reliance on the opinions of Drs. Margolis and Sawyer, which he argues cannot stand as substantial evidence because they took into consideration only two of his mental health diagnoses, ADHD and PTSD, and did not have the benefit of review of later-submitted material evidence. *See* Statement of Errors at 8-10.

"An administrative law judge has discretion to resolve conflicts among expert opinions by according great weight to the opinion of a nonexamining state agency physician." *Gilson v. Colvin,* No. 1:12-cv-376-GZS, 2013 WL 5674359, at *3 (D. Me. Oct. 17, 2013). *See also, e.g., Shaw v. Secretary of Health & Human Servs.,* No. 93-2173, 1994 WL 251000, at *4 (1st Cir. June 9, 1994) ("The regulations do not require a particular view of the evidence, but leave ambiguities and inconsistencies to be sifted and weighed by the ALJ. . . . While generic deference is reserved for treating source opinions, the regulations also presuppose that nontreating, nonexamining sources

11

may override treating [or examining] doctor opinions, provided there is support for the result in the record."); *Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

"[T]he amount of weight that can properly be given the conclusions of non-testifying, nonexamining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted). "In some cases, written reports submitted by nontestifying, nonexamining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted). This court has noted that "there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge." *Brackett v. Astrue,* No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (citations omitted).

The plaintiff identifies, as material evidence unseen by Drs. Margolis and Sawyer, (i) additional opinion and treatment records from Dr. Minot, (ii) progressively falling Global Assessment of Functioning ("GAF") scores, dipping from the 60-65 range in 2008 to 55 in May 2011 and 48 in November 2011, (iii) the opinions of Drs. Minot, Bonney, and Guernelli, and

12

(iv) extensive treatment notes/diagnoses. *See* Statement of Errors at 8-9.[5] He argues that one cannot be confident that, had Drs. Margolis and Sawyer seen this evidence, they would have continued to opine that his mental impairments were nonsevere. *See id*. at 9 (citing *Brown v. Barnhart,* No. 06-22-B-W, 2006 WL 3519308, at * 3 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 28, 2006)).

Nonetheless, as the commissioner observes, *see* Opposition at 5, Dr. Margolis considered mental health treatment notes through February 2011, *see* Record at 65-67, and Dr. Sawyer had the benefit of review of at least one additional treatment note dated April 2011, *see id*. at 90. In support of their finding of nonseverity, Drs. Margolis and Sawyer cited essentially normal findings on examination and stability of symptoms on medication:

> Inconsistency between medical record and AFF's.[6] MD states that [the plaintiff] reports doing well on the current medications. Other than insomnia, "no other acute psychiatric complaints noted[.]" [The plaintiff] presented as alert, cooperative [with] no abnormal[i]ties of speech or appearance. Mood was euthymic [with] appropriate affect. He reports the [plaintiff] as being stable, except for insomnia. Signs and symptoms are nonsevere.

*Id*. at 68, 91. *See also id*. at 92 (observation by Dr. Sawyer that the medical evidence of record "consistently reports stable mood, intact cognition, improvement with treatment").

---

[5] A GAF score represents "[t]he clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* (boldface omitted). A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* (boldface omitted). A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (boldface omitted).

[6] It is unclear what the reviewers meant by "AFF's." However, nothing turns on this.

As the commissioner argues, *see* Opposition at 6, the administrative law judge impliedly deemed treatment notes unseen by Drs. Margolis and Sawyer cumulative, relying on consistent findings of normal mental status examinations and stable symptoms with medication, including in records postdating those seen by Drs. Sawyer and Margolis, *see* Record at 19. He cited, *inter alia*, notations by Dr. Minot of normal to mild symptoms on examination in August 2011 and April 2012, *see id*. at 1689, 1702, and a February 2012 report by the plaintiff to treating social worker Amy Morin, LCSW, that he was "doing well[,]" *id*. at 1207.

The commissioner also persuasively argues that the GAF scores of 55 and 48 do not undermine the administrative law judge's reliance on the Margolis and Sawyer opinions in that such scores are one-time snapshots and do not necessarily correlate with severe occupational restrictions. *See* Opposition at 7-8; *LeBlanc v. Colvin*, No. 2:13-cv-348-JDL, 2014 WL 5431567, at *4 (D. Me. Oct. 24, 2014) (observing that "[a] GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions" and that "a GAF score is nothing more than a snapshot of a particular moment") (citations and internal quotation marks omitted).

Even if, as the plaintiff's counsel posited at oral argument, the declining scores should be viewed as reflecting a pattern, the administrative law judge reasonably focused on the results of mental status examinations. As the commissioner points out, *see* Opposition at 7-8, while Morin assessed a GAF score of 48 at a November 10, 2011, visit, she also noted on the same date that the plaintiff's mental status examination was normal but for "fair" judgment and impulse control, *see* Record at 1235-37. Likewise, while Dr. Minot assessed a GAF score of 55 on May 26, 2011, *see id*. at 1685, on the same date he noted that the plaintiff was "doing reasonably well considering that he [was] living with his mother," was still providing care for his daughter and enjoying doing

14

so, and was reluctant to consider moving back in with his girlfriend but otherwise denied "any acute concerns or side effects at this time[,]" *id*. at 1687. Dr. Minot found no abnormalities on mental status examination and noted that the plaintiff was "stable overall on his current medication regimen." *Id*.[7]

While Drs. Margolis and Sawyer did not see the opinions of Drs. Minot and Bonney, this was "evidence supportably dismissed or minimized by the administrative law judge." *Brackett*, 2010 WL 5467254, at *5 (citation omitted). Specifically, the administrative law judge accorded the Minot and Bonney opinions little weight because he deemed them inconsistent with the evidence of record. *See* Record at 18-19. As elsewhere discussed, this evidence included largely normal mental status examinations, lack of complaints, and the plaintiff's activities, such as intricately sorting his baseball card collection and playing video games. While Drs. Margolis and Sawyer did not see the opinion of Dr. Guernelli, I have concluded, as discussed above, that the administrative law judge likely would have accorded it little weight for the same reasons as he did the Minot opinion. Hence, none of the unseen opinions was material.

### B. Credibility Determination

The administrative law judge found that the plaintiff's allegations were not credible to the extent inconsistent with his RFC determination. *See id.* at 17. After discussing inconsistencies between the objective medical evidence and those allegations, he stated:

> Although the [plaintiff] has alleged that his impairments prevent him from sustaining work in any capacity, the record . . . evidence establishes that he has substantially greater functional capabilities. In his Function Report, [he] noted taking care of his infant daughter by feeding her and changing her. He also noted taking care of pets. [He] noted preparing simple meals and washing dishes. [He]

---

[7] By contrast, in *Brackett*, this court characterized evidence unseen by an agency nonexamining consultant on whom the administrative law judge had relied as material when it included not only significantly lower GAF scores but also progress notes that the administrative law judge had mischaracterized as "benign," reflecting that the claimant was experiencing such symptoms as shaking, anxiety, inability to sleep, and having a short fuse. *See Brackett*, 2010 WL 5467254, at *6.

> reported driving a car and shopping in stores. [He] testified that he is able to shower on his own. Although he testified to problems sitting for too long, [he] testified that he plays video games for up to two hours per day. Although [he] testified to problems with concentration, he explained that he collects cards and spends most of the time carefully sorting them by brand and year. [He] also testified that he uses Facebook for about thirty minutes per day.
>
> Although [he] alleged chronic pain, the record shows that [he] has reported good relief from pain with medication. Moreover, imaging post-surgery has only shown mild degenerative disc disease. Because the inconsistency between the [plaintiff's] activities and his allegations regarding the functional limitations of his impairment, the undersigned does not find [his] testimony regarding the degree of limitation imposed by his impairments to be fully credible and consequently gives [his] testimony limited weight. It is also notable that Dr. Minot had previously commented that the [plaintiff] had exhibited persistent dishonesty and that Dr. Marshall [Peter G. Marshall, M.D., author of a December 1, 2010, Anesthesia/Pain Consultation Report] previously stated that the [plaintiff] projected a sense of disability far in excess of his physical findings and physical abilities.

*Id*. at 17-18 (citations omitted).

The plaintiff complains that the administrative law judge improperly discounted his credibility on the basis of the Minot and Marshall comments. *See* Statement of Errors at 20. He points out that Dr. Minot's comment dates from April 2010, prior to his amended alleged onset date of disability, and that Dr. Minot went on to assess significant mental limitations in July 2012. *See id*. He points out that the Marshall comment was "truncated" from the following note:

> ASSESSMENT/PLAN: This gentleman has the most dismal psychosocial profile possible for recovery from back surgery and chronic back pain. He is obviously generally depressed, unmotivated and projects a sense of disability far in excess of his physical findings and physical abilities.

*Id*. (quoting Record at 395).

Finally, he argues that his activities of daily living, standing alone, do not support the administrative law judge's RFC determination. *See id*. at 20-21; *see also, e.g., Huston v. Colvin*, No. 2:12-cv-00282-JAW, 2013 WL 3816615, at *9 (D. Me. July 19, 2013) (while an administrative law judge may properly consider activities of daily living, those activities standing

alone do not constitute substantial evidence of a capacity to undertake full-time remunerative employment).

I find no fault with the credibility determination. As the commissioner argues, *see* Opposition at 17-18, the administrative law judge reasonably viewed the comments of Drs. Minot and Marshall as casting doubt on the plaintiff's credibility. While the Minot comment was made a few months prior to the plaintiff's amended alleged onset date of disability, July 1, 2010, the plaintiff fails to demonstrate that partial reliance upon it was improper. As the commissioner notes, *see id.* at 17, an administrative law judge may consider a claimant's "complete medical history for at least the 12 months preceding the month in which [the claimant files for disability benefits,]" 20 C.F.R. §§ 404.1512(d), 416.912(d), and the plaintiff filed for benefits in January 2011, *see* Record at 10. While Dr. Minot did assess marked restrictions in July 2012, that did not preclude the administrative law judge from taking note of his 2010 comment regarding persistent dishonesty. The Marshall comment, even in context, reasonably can be read to suggest that the plaintiff exaggerated his physical limitations. As the commissioner observes, *see* Opposition at 17 n.9, Dr. Marshall stated in the same treatment note that "[m]any of [the plaintiff's] complaints [were] secondary to posture and deconditioning[,]" Record at 396.

In any event, the administrative law judge did not rely exclusively on the Minot and Marshall comments or on the plaintiff's daily activities in discounting the credibility of his allegations and determining his RFC. He also relied on relatively normal findings on examination and the opinions of agency nonexamining consultants, including, for purposes of determination of the plaintiff's mental RFC, Drs. Margolis and Sawyer. *See* Record at 19. To the extent that he relied in part on the plaintiff's activities, which included his extensive work sorting through his collection of 250,000 baseball and football cards and putting them into binder books, daily walking

of up to a mile, and frequent swimming, he reasonably deemed them suggestive of only mild restrictions. *See id.* at 16-18, 40.

The plaintiff, accordingly, falls short of demonstrating that the administrative law judge's credibility determination should be disturbed. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").[8]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for*

---

[8] At oral argument, the plaintiff's counsel added that, in contravention of *Ormon v. Astrue*, 497 Fed. Appx. 81 (1st Cir. 2012), the administrative law judge wrongly discredited the plaintiff's complaints of pain although his own treating physicians had credited them, providing successively greater levels of treatment to address them. This argument, which was made for the first time at oral argument, is waived. *See, e.g., Farrin*, 2006 WL 549376, at *5. In any event, even were it not waived, it would not carry the day. As the plaintiff's counsel acknowledged, this court has declined to read *Ormon* that broadly. Most recently, in *Hadley v. Colvin*, No. 2:14-cv-77-JHR, 2014 WL 7369501 (D. Me. Dec. 28, 2014), this court rejected an argument that, in violation of *Ormon*, an administrative law judge wrongly discredited a claimant's allegations in part on the basis of lack of objective medical evidence. *See Hadley*, 2014 WL 7369501, at *4. The court observed that, whereas in *Ormon*, the administrative law judge had discredited a claimant's allegations solely on the basis of a lack of objective medical evidence and his unsupported layperson's assessment that she was malingering, the administrative law judge in *Hadley* had provided "a host of reasons for his finding." *Id.* Here, as well, the administrative law judge did not rely solely on a lack of objective medical evidence, supplying on the contrary several reasons for his credibility finding.

*oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 19th day of January, 2015.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge
